**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JORGE L.  MUNOZ** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **SUPERINTENDENT JAMES L. GRACE,** | : | **NO.  05-4199** |
| **THE ATTORNEY GENERAL OF** | : | |
| **PENNSYLVANIA, and THE DISTRICT** | : | |
| **ATTORNEY'S OFFICE OF** | : | |
| **MONTGOMERY COUNTY** | : | |
| **Respondents.** | : | |

**DuBOIS, J.**                                                                                    **AUGUST 9, 2007**

## MEMORANDUM

## I.      INTRODUCTION

Petitioner Jorge L. Munoz is currently incarcerated at the State Correctional Institution at Smithfield in Huntingdon County, Pennsylvania.  On August 5, 2005, Munoz filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court.  Presently before the Court is a single claim: ineffective assistance of trial counsel for failing to impeach Commonwealth witness Michael Kent Jones about a prior inconsistent statement.  Two other claims asserted in the Petition were withdrawn by counsel.

The § 2254 petition was referred to Magistrate Judge David R. Strawbridge for a Report and Recommendation on October 17, 2005.  In a Report and Recommendation dated November 20, 2006, Magistrate Judge Strawbridge recommended that the Court (1) deny petitioner's ineffective assistance of trial counsel claim on the merits and (2) not issue a certificate of appealability.

Petitioner filed multiple *pro se* and counseled Objections to the November 20, 2006

Report and Recommendation.  In addition to objecting to the recommendations of Magistrate Judge Strawbridge, petitioner seeks leave to raise and introduce evidence on additional claims not presented to Magistrate Judge Strawbridge.  For the reasons set forth below, the Court approves and adopts the Report and Recommendation, overrules petitioner's Objections, declines to consider additional claims not presented to the Magistrate Judge, denies the Petition for Writ of Habeas Corpus, and does issue a certificate of appealability.

## II. ___FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case are detailed in the November 20, 2006 Report and Recommendation and are included in this Memorandum insofar as necessary to address the issues raised by the objections.

The case arises out of a dispute between the "Latin Kings" gang and the "Border Brothers" gang.  Petitioner is alleged to have been a member of the Latin Kings.  In April 1996, a Border Brothers member stabbed Victor Rodriguez, the purported leader of the Latin Kings.  On December 5, 1996, Rodriguez, his wife Margie, and others encountered petitioner smoking marijuana with Christopher McNelly and Luis Javier Melendez in an alley in Norristown, Pennsylvania.  McNelly is alleged to have been a member of the Border Brothers and to have been present at the April 1996 stabbing.  McNelly left the alley after a heated argument erupted in which both Victor Rodriguez and McNelly drew weapons.  Petitioner and Rodriguez then engaged in a brief conversation, after which petitioner went with Melendez to retrieve a stolen shotgun from Melendez's apartment.  After confirming that petitioner had retrieved the shot gun, Victor Rodriguez, along with petitioner, Melendez, and Margie Rodriguez, left Melendez's apartment.  Soon thereafter they encountered McNelly at the intersection of George and West

2

Airy Streets.  Upon seeing McNelly, Rodriguez told petitioner to "kill the nigger's ass."  N.T., 5/19/98, at 129.  Petitioner then pulled out the concealed shotgun and shot McNelly in the chest, killing him.

Michael Kent Jones, an off-duty parking officer, witnessed the murder.  Following the murder, Jones gave a statement to the police in which he provided a detailed description of the murderer.  See Resp. Ans. to Pet.'s Suppl. Obj., Ex. D.  However, when asked "did you see who this person shot?," Jones responded "No."  Id. at 2.

Petitioner was arrested and charged with various offenses including first degree murder.  At trial, Commonwealth witnesses, including Jones, testified that the victim "had no weapon in his hands and made no attempts to reach for any weapon; rather, the victim raised his hands in the air in front of his body in a defensive-like position and did not move towards the group."  Commonwealth v. Munoz, Cr. No. 09795-97, at 2 (Pa. Super. Ct. Jul. 23, 1999) (citing N.T. 5/19/1998, at 144; N.T., 5/29/1998, at 30, 32-33, 75).

Petitioner's defense at trial was that he acted in self-defense, believing that the victim was going to shoot him.  This theory was supported by both petitioner's testimony, and the testimony of a police officer who stated that the paramedics at the scene found a gun tucked in the waistband of the victim's pants at the small of his back.  Id. at 3.

On May 22, 1998, following the jury trial, petitioner was found guilty of first degree murder, theft by receiving stolen property, possession of an instrument of crime, and recklessly endangering another person.  He is currently serving a sentence of life imprisonment.

On October 8, 1998, petitioner filed a notice of appeal in the Superior Court of Pennsylvania raising four claims: (1) the trial court improperly charged the jury as to the burden

of proof on the issue of self-defense; (2) the trial court improperly prohibited petitioner from presenting evidence of the victim's prior acts of violence; (3) trial counsel was ineffective for failing to call Margie Rodriguez as an eyewitness; and (4) trial counsel was ineffective for failing to present a defense of voluntary "drugged" condition to negate the mens rea for first degree murder.  The Superior Court of Pennsylvania rejected those four claims and affirmed the sentence on July 23, 1999.  On November 24, 1999, the Supreme Court of Pennsylvania denied the Petition for Allowance of Appeal filed by petitioner that raised the issue of the trial court's exclusion of evidence of an alleged prior violent act of the victim.  Commonwealth v. Munoz, 747 A.2d 367 (Pa. 1999).

On November 24, 2000, petitioner filed an application for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541, *et seq*.  The trial court denied the PCRA petition by Order dated September 11, 2001.  Petitioner appealed that decision, raising three issues: (1) whether  trial counsel was ineffective for failing to impeach Commonwealth witness Michael Kent Jones with a prior inconsistent statement, and whether appellate counsel was ineffective for failing to raise the issue upon direct and post-conviction appeal; (2) whether trial counsel was ineffective for failing to request a corrupt source charge for the jury with respect to the testimony of Luis Javier Melendez, and whether appellate counsel was ineffective for failing to raise the issue upon direct appeal; and (3) whether appellate counsel was ineffective for failing to raise upon direct appeal the issue of the trial court ordering petitioner to be tried as an adult in criminal court.  On August 6, 2002, the Superior Court affirmed in part and reversed in part the trial court's decision.  That court concluded that there was no basis for a corrupt source charge and that appellate counsel did not render ineffective assistance for failing to

4

challenge the denial of the request to transfer to juvenile court on direct appeal.  See

Commonwealth v. Munoz, CR. No. 975-97, at 9-13 (Pa. Super. Ct. Aug. 6, 2002).  The Superior

Court remanded the case for a hearing to determine whether petitioner's trial counsel was

ineffective for failing to impeach Michael Kent Jones's testimony with his prior inconsistent

statement.

Following hearings on this issue on August 31, 2002 and January 9, 2003, the trial court

dismissed the PCRA petition.  On February 2, 2004 the Superior Court affirmed.   Petitioner's

Application for Reargument En Banc was denied on March 15, 2004, and a Petition for

Allowance of Appeal in the Supreme Court of Pennsylvania was denied on May 11, 2005.

## III.    28 U.S.C. § 2254 PETITION

On August 5, 2005, petitioner filed a timely Petition for Writ of Habeas Corpus pursuant

to 28 U.S.C. § 2254 in this Court.  The Petition raised three claims: (1) ineffective assistance of

trial counsel for failing to impeach Commonwealth witness Michael Kent Jones about a prior

inconsistent statement, (2) ineffective assistance of trial counsel for failing to request a "corrupt

source charge" in connection with the testimony of Luis Javier Melendez, and (3) ineffective

assistance of appellate counsel "for failing to raise weight of evidence and the trial court's ruling

to deny transfer to juvenile court on direct appeal."  Pet. at 4.

The § 2254 Petition was referred to Magistrate Judge David R. Strawbridge for a Report

and Recommendation on October 17, 2005.  On June 30, 2006 Magistrate Judge Strawbridge

issued a Report and Recommendation in which he recommended that petitioner's two ineffective

assistance of trial counsel claims be denied on the merits, and that the remaining ineffective

assistance of appellate counsel claim be dismissed as procedurally defaulted.  Additionally,

Magistrate Judge Strawbridge recommended that the Court not issue a certificate of appealability on the ground that petitioner has not made a substantial showing of the denial of a constitutional right.

By letter dated July 11, 2006, counsel for petitioner requested that the Court vacate the June 30, 2006 Report and Recommendation in order to permit counsel to file a memorandum of law in support of the Petition. Magistrate Judge Strawbridge granted the request to vacate by Order dated July 14, 2006.

On August 5, 2006, petitioner filed a memorandum of law in support of the Petition and abandoned two of the original claims presented in the Petition. Specifically, petitioner stated that "Petitioner will now only be pursuing the issue involving trial counsel's ineffectiveness for failing to impeach an eyewitness [Jones] with his prior inconsistent statement." Pet. Mem. at 1-2. At trial, Jones testified that the victim had raised his hands in a defensive posture before being shot. Petitioner argues that this testimony was contradicted by a statement Jones gave to police one hour after the shooting in which he stated that he did not see who was shot.

In a second Report and Recommendation dated November 20, 2006, upon review of petitioner's Memorandum, Magistrate Judge Strawbridge recommended that the Court deny petitioner's ineffective assistance of trial counsel claim on the merits and not issue a certificate of appealability on that claim. Magistrate Judge Strawbridge rejected petitioner's arguments on the ground that the state courts had not unreasonably concluded that petitioner's ineffective assistance of counsel claim was without merit. Specifically, Magistrate Judge Strawbridge concluded that trial counsel's decision not to cross-examine Jones was not objectively unreasonable in light of trial counsel's testimony at the PCRA hearing that she witnessed the

testimony and cross examination of Jones at the Rodriguez trial and based her decision not to attempt to impeach Jones on her impression of that trial.  See Report & Recommendation at 12-13 (citing Strickland v. Washington, 466 U.S. 668 (1984)).

On December 15, 2006, petitioner filed counseled Objections to the Report and Recommendation.  Following this filing, petitioner filed additional *pro se* submissions on February 22, 23, and 26, and May 16, 2007.  The *pro se* filings repeat and amplify arguments raised in the counseled filings, and will accordingly be incorporated into the analysis of the counseled filings.

In his counseled filing, petitioner raises two Objections to the Report and Recommendation.  First, petitioner argues that "there was no reasonable basis for the decision of trial counsel not to impeach the testimony of Michael Kent Jones by introducing his prior inconsistent statements," and "the rejection of this claim by the Superior Court of Pennsylvania was an unreasonable application of constitutional law" under Strickland.  Pet. Obj. at 1.  Second, petitioner argues that Magistrate Judge Strawbridge failed to reach the prejudice prong of the Strickland analysis.

In addition to these two Objections, petitioner seeks leave to raise and introduce evidence on seven new issues pursuant to Local Rule 72.1(IV)(c).  Petitioner argues that "prior counsel were requested by petitioner to include these issues in the petition or amendments thereto, but the issues were not included.  Present counsel for petitioner believes that these additional issues are meritorious."  Id. at 4.

## IV.    STANDARD OF REVIEW

Where a court refers a habeas petition to a magistrate judge, "the court shall make a *de*

*novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . . [and] the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. §636(b)(1)(c).  Accordingly, the Court must make a *de novo* determination of those portions of Magistrate Judge Strawbridge's Report and Recommendation to which petitioner objects.

The Court's review of the Report and Recommendation is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 2254(d), a petition for habeas corpus may be granted only if (1) the state court adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court addressed this standard of review in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  In <u>Williams</u>, the Court explained that "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Hameen v. State of Delaware</u>, 212 F.3d 226, 235 (3d Cir. 2000) (citing <u>Williams</u>, 529 U.S. at 389-90).  The Court in <u>Williams</u> further stated that "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u>

Finally, in reviewing the state court record, factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

## V.   PETITIONER'S OBJECTIONS

### A.   Magistrate Judge Strawbridge Did Not Err in Recommending that this Court Deny Petitioner's Ineffective Assistance of Counsel Claim

Petitioner first objects to the recommendation of Magistrate Judge Strawbridge that this Court deny petitioner's ineffective assistance of counsel claim based on trial counsel's decision not to cross examine Jones on his statement to the police which gives rise to the inference that he did not see who was shot.  It is petitioner's argument that "[t]here was no reasonable basis for the decision of trial counsel not to impeach the testimony of Michael Kent Jones by introducing his prior inconsistent statements" and "[t]he rejection of this claim by the Superior Court of Pennsylvania was an unreasonable application of constitutional law" under Strickland.  Pet. Obj. at 1.[1]

_____

[1]In his _pro se_ submissions, petitioner also advances the argument that trial counsel did not in fact attend the Rodriguez trial, and therefore, her testimony at the PCRA Hearing in which she explained her rationale for not impeaching Jones should be disregarded.  See, e.g., Pet. Suppl. Obj. at 15 ("Counsel is going against her own argument when she says she was present . . . the day Mr. Jones testified.").  This argument is based on trial counsel's statement at petitioner's trial that she did not know if she heard the witness Alex Morales testify at the Rodriguez trial.  N.T. 5/19/1998, at 170-71.  Petitioner points out that Jones testified on the same day as Morales and that, accordingly, if trial counsel did not attend the trial on the day that Morales testified then she did not attend the trial on the day that Jones testified.  However, the trial transcript cited by petitioner does not support that argument.  Trial counsel stated that "I was not here for the entire trial of Victor Rodriguez.  I was here for a substantial portion of it.  I don't know if I saw this witness [Morales] testify.  I may have seen parts of it."  Id.  The prosecutor responded that "I know you were here for the entire testimony of Alex Morales, Javier Melendez – what you missed was Victor Rodriguez on the stand."  Id.  At best for petitioner, this testimony is far from

At the PCRA hearing, trial counsel testified that she chose not to try to impeach Jones based on the statement to the police after attending the earlier trial of petitioner's co-defendant Victor Rodriguez at which Jones testified.  First, at the Rodriguez trial, Jones explained the inconsistency by stating that he had understood the police's question to ask whether he could identify the victim, not whether he had seen the shooting.[2]  Second, trial counsel expressed reservations about pursuing the line of questioning because, "when asked about this in a previous trial, in my opinion he hammered the defense because he was given the repeated opportunity to describe the victim's actions, which was an area that I really did not want him to repeat over and over again in front of the jury."  PCRA Hearing, N.T. 10/31/2002, at 12.  The PCRA court accepted trial counsel's explanation of her decision, and denied petitioner's claim of ineffective assistance of counsel on this basis.

In challenging the state courts' decision on this claim, petitioner first argues that Jones's explanation of the inconsistency was called into question by Jones's statement given to the police

---

clear and does not provide a basis for disregarding trial counsel's testimony at the PCRA hearing.

[2]Specifically, at the Rodriguez trial Jones testified as follows on cross examination:

Q:   Now, you're telling the police absolutely everything that you saw that evening in this statement so that you could be totally accurate with them, and you told them that you did not see the guy that was shot, right?

A:   He asked me, you know, it was more or less that I didn't know who the guy was shot.  I didn't know.

Q:   I didn't ask you if you knew the guy that was shot.  I asked you if you said to the police, you know, you told them you didn't see the man that was shot; isn't that correct?

A:    I thought he meant did I know who was shot.  I didn't know who the guy was until later.

Pet. Mem., Ex. B, N.T. 3/17/1998, at 155-56.

immediately after the shooting.  In that statement, Jones stated that he "asked a tall black male wearing a black trench coat if someone got shot."  Resp. Ans. to Pet.'s Suppl. Obj., Ex. D, at 4-5. Petitioner argues that this statement suggests that Jones did not see the victim being shot, and, accordingly, that trial counsel was ineffective for deciding not to attempt to impeach Jones on the basis of his purported explanation of the inconsistency.

Second, petitioner argues that trial counsel was mistaken and Jones did not, in fact, hammer the defense at the Rodriguez trial upon being impeached by the inconsistent statement. Petitioner argues that "[a] review of the trial transcript of Mr. Jones's testimony in that case . . . reveals that Mr. Jones only testified about the victim's actions on direct examination by the prosecutor," and not during cross examination.  Pet. Mem. at 6.

Finally, petitioner argues that the failure to impeach prejudiced the outcome of the trial because Jones had "enhanced credibility" as an adjunct member of law enforcement, and was the Commonwealth's "star witness."  Pet. Mem. at 7.

### 1.    Legal Standard–Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two prong test that a petitioner must satisfy before a court will find that counsel did not provide effective assistance.  Under the Strickland test, a petitioner must show: (1) that his attorney's representation fell well below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, barring counsel's ineffectiveness, the result of the proceeding would have been different.  Id. at 688-96.  To satisfy the first prong of the Strickland test, a petitioner is required to show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In evaluating

counsel's performance, a reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.  Moreover, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (citation omitted).

To satisfy the second prong of the Strickland test, a petitioner must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding.  Id.  It follows that counsel cannot be ineffective for failing to pursue meritless claims or objections.  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999); United States v. Fulford, 825 F.2d 3, 9 (3d Cir. 1987).

The Court's review of the state court's Strickland analysis is governed by 28 U.S.C. § 2254(d)(1).  As the Supreme Court recently stated:

> If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' 28 U.S.C. § 2254(d)(1). Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.

Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (per curiam) (citations omitted).

## 2.    Analysis

In reviewing petitioner's ineffective assistance of counsel claim, and following a hearing

on the issue, the state court rejected petitioner's claim.  The Superior Court relied on trial

counsel's explanation that, after attending the trial of Rodriguez and witnessing Jones testify,

she determined that attempting to impeach him on the basis of the police statement would be

more damaging than beneficial.  The court also noted that, in trial counsel's opinion, the apparent

inconsistency between the police statement and Jones's testimony was resolved by "the

explanation provided at the previous trial and by the prosecutors to defense counsel . . . that Mr.

Jones misunderstood the question posed by the police and believed they were asking whether he

could identify the victim, and not whether he saw him."  Based on the foregoing, the Superior

Court concluded that trial counsel's "conscious decision not to attempt to impeach" Jones on the

basis of the police statement was not objectively unreasonable.  Commonwealth v. Munoz, CR.

No. 975-97, 1372 EDA 2003, at 10-11 (Pa. Super. Ct. Feb. 2, 2004).

It is petitioner's argument that the state court's Strickland analysis was unreasonable

because the court failed to consider trial counsel's conduct in light of all the surrounding

circumstances.  Specifically, petitioner argues that the state court failed to consider (1) that

Jones's statement to police on the night of the murder that he asked a bystander if someone was

shot suggests that he did not see the shooting, and (2) that trial counsel was factually inaccurate

when she stated that Jones testified repeatedly about the victim's defensive posture on cross-

examination at the Rodriguez trial.

On the first issue, the Court agrees with Magistrate Judge Strawbridge, and concludes that

Jones's question to a bystander does not undermine his testimony.  The impact of this statement

on Jones's eyewitness testimony was specifically addressed at the PCRA hearing.  At the

hearing, the state court commented on this issue:

13

> [W]hen somebody gets shot in broad daylight on the street, when somebody is in his motor vehicle stopped at a traffic control and this whole thing unravels, it's like Alice in Wonderland . . . . [T]his event was so incredulous that [Jones] definitely didn't stick around having seen what he saw, he went around the neighborhood and he corroborated with another person what he saw.  It wasn't a question of not seeing it, it was a question of he couldn't believe it.

PCRA Hearing, N.T. 10/31/2002, at 40-41.  Thus, contrary to petitioner's argument, the state court considered this issue, but ultimately concluded that Jones's question to a bystander did not sufficiently undermine trial counsel's decision to not cross examine Jones about his statement to the police that he did not see who was shot.  As such, petitioner's argument on this issue does not support a conclusion that the Superior Court's decision was objectively unreasonable–petitioner has failed to show that the Superior Court did not consider the bystander statement.

Second, the Court notes that a review of the transcript of the Rodriguez trial does call into question trial counsel's representation that Jones, upon cross examination relating to the prior inconsistent statement "hammered the defense," by repeatedly describing the victim's defensive posture.  Jones made numerous references to the victim's defensive posture on direct examination, see N.T. 3/17/1998, at 139-42,[3] not on cross examination.  On cross examination, when asked repeatedly about his statement that he did not see who was shot, Jones explained that he thought the detective questioning him "meant did I *know* who was shot."  Id. at 156 (emphasis added).  Jones further testified that he may have been confused about that question because of the trauma of the situation:

> I was very upset, you know, I was very upset.  He was running questions and answer to

---

[3]For example, Jones described the victim's actions by stating that, "[h]is hands were in front of him, they were talking like this, and his hands were like go ahead and back up, man, and leave me alone.  I'm not saying he said that, but like that kind of mannerism," and "he did a flinch move, you know, trying to protect himself."  N.T. 3/17/1998, at 139-40.

me a mile a minute.  I was very upset, I just wanted to get home and get with my family, you know, try to relax and get this whole thing out of my mind for the night.  And you it was just a tragic evening for me altogether.

Id. at 157.

The question whether the so-called "hammering" evidence was elicited on direct or cross-examination is of little or no legal significance.  What matters is that the witness testified in a way that trial counsel deemed to be unfavorable to petitioner.  Specifically, trial counsel testified at the PCRA hearing that she did not want to ask Jones about his statement to the police because she was concerned about giving him "the repeated opportunity to describe the victim's actions, which was an area that I really did not want to repeat over and over again in front of the jury."  PCRA Hearing, N.T. 10/31/2002, at 12.  Trial counsel's decision to avoid such testimony was objectively reasonable whether it was supported the witness's responses on direct or cross examination in her presence.  Moreover, in addition to avoiding giving Jones the opportunity to repeat the damaging testimony given at the Rodriguez trial in her presence, trial counsel repeatedly stated that, in her opinion, his answers to questions about his police statement were simply not helpful to the defense, an opinion not limited to Jones's descriptions of the victim's defensive posture.  See, e.g., PCRA Hearing, N.T. 10/31/2002, at 10, 22, 53.

"A court is not permitted to 'second-guess counsel's assistance after conviction' but must evaluate the challenged conduct 'from counsel's perspective at the time.'  Counsel's performance may only be found deficient where it falls below 'an objective standard of reasonableness' and strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" United States v. Jasin, 2000 U.S. Dist. LEXIS 18725, *10 n.2 (E.D. Pa. Dec. 11, 2000) (citing Strickland, 466 U.S. at 688-90).  The Superior Court found that,

15

after observing the testimony of Jones at Rodriguez's trial, evaluating the impact of that

testimony and cross-examination, and considering the totality of the circumstances, trial counsel

made the strategic decision not to attempt to impeach Jones using his statement to the police.

The Court concludes that the state court's application of governing federal law was not

objectively unreasonable.  See Yarborough, 540 U.S. at 4.  The Superior Court was not

unreasonable in concluding that trial counsel did not render constitutionally ineffective assistance

by failing to cross examine Jones on his statement to the police that he did not see who was shot.

Accordingly, the Court overrules petitioner's Objection on this issue.

> **2.      Magistrate Judge Strawbridge Did Not Err in Not Reaching the Strickland Prejudice Prong**

Petitioner states in his second objection that Magistrate Judge Strawbridge "did not reach

the issue as to whether there was a reasonable probability of a different outcome if trial counsel

had impeached Mr. Jones.  Petitioner objects to the lack of a decision on this issue."  Pet. Obj. at

1-2.

In the Report and Recommendation, Magistrate Strawbridge did not consider the

prejudice prong of the Strickland analysis noting that "[b]ecause Munoz failed to establish that

trial counsel's assistance fell below an objectively reasonable standard, this second prong need

not be considered."  Report & Recommendation at 13.

The Court overrules petitioner's objection on this issue.  If a court determines that

counsel's performance was not deficient, analysis under the prejudice prong of the Strickland

inquiry is not necessary.  See, e.g., Stevens v. Del. Corr. Ctr., 295 F.3d 361, 374 n.4 (3d Cir.

2002).  Accordingly, as the Court agrees with the Report and Recommendation and concludes

16

that petitioner failed to establish that trial counsel's performance was deficient, the Court need not reach the prejudice prong.[4]

## VI.    CONSIDERATION OF ADDITIONAL CLAIMS

Next, the Court will address petitioner's request that he be permitted to raise and introduce evidence on a number of additional claims.  Whether the Court can consider claims raised after the filing of the Report and Recommendation is governed by Local Rule 72.1(IV)(c).  Rule 72.1(IV)(c) provides that: "All issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."  In Kirk v. Meyer, 279 F. Supp. 2d 617 (E.D. Pa. 2003), the court stated that "although the Third Circuit has remained silent on the precise issue, the vast majority of authority holds that a district court may properly refuse to hear claims not first presented to the assigned Magistrate Judge."  Id. at 619; see also Hammock v. Vaughan, 1998 U.S. Dist. LEXIS 4562, *2 (E. D. Pa. Apr. 8, 1998) ("New claims may not be raised in objections to a magistrate's report.").

The Court notes that all of the additional claims that petitioner seeks to raise could have been presented to the magistrate judge.  In fact, the majority of these claims were raised in petitioner's direct and collateral appeals.  Accordingly, "unless the interest of justice requires it,"

---

[4]Moreover, even if the Court reached this issue, petitioner has not demonstrated "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Based on the other evidence in this case, including the testimony of Alex Morales, and Louis Javier Melendez, that corroborates Jones's description of the shooting, the Court cannot conclude that cross examination of Jones based on the statement he gave to the police would have resulted in a different outcome.  See Resp. Ans., Ex. C, at 3 (summarizing evidence at trial).

the Court will not consider petitioner's claims.  The Court will address each additional claim in

turn to determine whether the interest of justice requires the Court to consider those claims.

### A.      Corrupt Source Charge for the Testimony of Luis Javier Melendez

_____First petitioner argues that trial counsel was ineffective for failing to request that the trial

court deliver a corrupt source charge in connection with the testimony of witness Luis Javier

Melendez.[5]  As discussed above, Melendez was present at the shooting, and the gun fired by

petitioner was retrieved from Melendez's home.  "It is well established that in any case where an

accomplice implicates the defendant, the judge should tell the jury that the accomplice is a

corrupt and polluted source whose testimony should be viewed with great caution."

Commonwealth v. Chmiel, 639 A.2d 9, 13 (Pa. 1994).

This claim was denied by the state court on PCRA review.  The Pennsylvania Superior

Court held that petitioner was not entitled to relief on this claim "because the record shows that

Melendez was not an accomplice to the murder."  See Commonwealth v. Munoz, CR. No. 975-

97, at 11 (Pa. Super. Ct. Aug. 6, 2002).  In reaching this decision the court, upon review of the

evidence at trial, concluded that "the evidence showed that Melendez was merely present when

the gun was retrieved and when the shooting subsequently occurred.  This alone was insufficient

to require an accomplice charge."  Id. (citing Commonwealth v. Williams, 732 A.2d 1167, 1181

(Pa. 1999)).

Based on this initial showing, the Court concludes that the interest of justice does not

require consideration of this claim.

_____

[5]This claim was raised by petitioner in the § 2254 Petition, but then abandoned by
previous counsel.

18

B.     **Evidence of Prior Violent Acts of the Victim**

Petitioner claims that the trial court erred by disallowing the introduction of prior violent

acts of the victim.[6]  According to petitioner, that evidence was to have been provided by  the

victim's aunt who would have testified about an incident "where the victim allegedly threatened

to cut a dog's head off and grabbed the dog."  N.T. 5/21/1998, at 88.

The trial court determined that this evidence was not relevant and excluded it.  In

excluding that evidence, the trial court held that "the victim's prior threat towards a dog did not,

in any way, go to show who was the aggressor at the time of this crime."  Commonwealth v.

Munoz, Cr. No. 09795-97, at 7-8 (Pa. Super. Ct. Jul. 23, 1999).  Petitioner challenged this

decision on direct appeal, and the Superior Court upheld the trial court's decision.  The Superior

Court noted that

> [T]he jury was informed that the victim had a gun on his person, was a member of a gang,
> had previously participated in an attack upon Victor Rodriguez where Rodriguez was
> stabbed, and also pulled a switchblade on Rodriguez during the incident in the alley just
> prior to the shooting.  Therefore, the jury was already aware of the victim's propensity for
> violence, and Appellant cannot show how the absence of the proffered testimony,
> regarding a threat to harm a dog, could have possibly resulted in prejudice.

Id. (citing Commonwealth v. Wyatt, 688 A.2d 710, 714 (Pa. Super. Ct. 1997), appeal denied, 699

A.3d 735 (Pa. 1997)).

Based on this initial showing, the Court concludes that the interest of justice does not

require consideration of this claim.

C.     **Failure to Call Corroborating Witness**

Petitioner claims that trial counsel was "ineffective for failing to call eyewitness Margie

_____

[6]This claim was also raised by petitioner in the § 2254 Petition, but then abandoned by
previous counsel.

Rodriguez, who would have testified that the victim made a motion with his left hand going to the side of his hip just before petitioner took out his shotgun," to corroborate petitioner's testimony that he acted in self-defense.  Pet. Obj. at 2.

Respondents argue that Margie Rodriguez's testimony would not have been helpful to the defense.  As the Superior Court explained on direct appeal, Margie Rodriguez stated "that the victim made a motion with his left hand going to the side of his hip right before [petitioner] took out his shotgun.  However, Ms. Rodriguez goes on to state that the victim 'brought his hands back out front before he was shot.'"  Commonwealth v. Munoz, Cr. No. 09795-97, at 10 (Pa. Super. Ct. Jul. 23, 1999) (quoting Investigation Interview Record, Margie Rodriguez, 12/6/1996, at 1-2).  On this basis, the Superior Court concluded that petitioner could not prove, as required by Commonwealth v. Hall, 701 A.3d 190, 201 (Pa. 1997), "the witness' willingness and ability to cooperate and appear on behalf of appellant."

Based on this initial showing, the Court concludes that the interest of justice does not require consideration of this claim.

### D.    Overly Confusing Justification Charge

Next, petitioner seeks to present the claim that "[t]he Superior Court unreasonably applied constitutional law by holding that the trial court did not err in its charge with respect to the defense of justification, which was so confusing that the trial court's attempt to correct it was ineffectual."  Pet. Obj. at 3.  This claim arises from the fact that the trial court initially mis-charged the jury about defendant's burden in proving justification/self-defense, and then

20

corrected itself.[7]

On this issue, the Superior Court held that "since the trial court admitted its mistake and properly instructed the jury before they retired to deliberate, Appellant suffered no prejudice, rendering any error in the original charge harmless."  Commonwealth v. Munoz, Cr. No. 09795-97, at 5 (Pa. Super. Ct. Jul. 23, 1999) (citing Commonwealth v. Nichols, 692 A.2d 181, 186 (Pa. Super. Ct. 1997) ("Error [in a jury instruction] will not be predicated on isolated excerpts. Instead, it is the general effect of the charge that controls.")).[8]  Although not directly addressing whether the instruction was "confusing," the Superior Court's  decision on direct appeal held that the trial court's instruction was not erroneous, despite the fact that the trial judge erred and then corrected himself.

---

[7]Specifically, the trial court initially stated, in error, that "the defense has the burden of proving self-defense by a preponderance of the evidence, which is more likely than not."  N.T. 5/22/1998, at 86-87.  In correcting this error, the court stated as follows:

> In my discussion with regard to justification or self-defense, I indicated to you wrongly, and I am correcting it now, that the defendant has to prove by a preponderance of the evidence justification or self-defense.  Remember my instruction to you that the defendant doesn't have to testify at all.  And therefore he has no burden of proof in a criminal case.  So, if he testifies to self-defense, it's the Commonwealth's burden to disprove self-defense beyond a reasonable doubt.  Do you see the difference?  So, forget about the civil burden, forget about any burden.  The defendant has no burden of proof to prove anything which means he has no burden of proof with regard to justification and no burden of proof to show self-defense for himself or others.  The Commonwealth, of course, as I've already charged you and correctly, has the burden beyond a reasonable doubt to disprove those assertions.

Id. at 101-02.

[8]In arguing that the Court should not consider this claim, respondents also cite Commonwealth v. Washington, 696 A.2d 1024, 1029 (Pa. 1997) for the proposition that when the evidence does not support a finding of self defense, no instruction on self defense is warranted.

Based on this showing, the Court concludes that the interest of justice does not require consideration of this claim.

### E.      Errors Related to Voluntary Manslaughter Charge

Petitioner argues that the trial court's charge as to voluntary manslaughter was in error "because the court did not explain killing under an unreasonable mistaken belief in justifying circumstances."  Pet. Obj. at 3.  Petitioner further argues that the failure of both trial and appellate counsel to raise this alleged error constitute ineffective assistance.  Id.

A similar claim was included in petitioner's 1925(b) Concise Statement filed in the trial court.  There, petitioner argued that the trial court erred in charging the jury that voluntary manslaughter is "when a defendant kills under an alleged mistaken belief in justifying circumstances [a]nd justifying circumstances is legal gibberish for self-defense."  Resp. Ans., Ex. C, at 14.[9]  The trial court, in considering this claim, rejected this argument because the record demonstrated that the court's instruction was derived from 15.203A of the Pennsylvania Suggested Standard Criminal Jury Instructions.  Id.

Based on this showing, the Court concludes that the interest of justice does not require consideration of this claim.

### F.      Failure to Investigate Posting of Petitioner's Mug Shot

The next claim raised by petitioner is that trial counsel was ineffective for failing to investigate the statement of Jones that he identified petitioner as the shooter by seeing his mug

---

[9]In the *pro se* reply to the response to petitioner's objections, petitioner further argues that the trial court's use of the term "gibberish" signaled to the jury that voluntary manslaughter "was a nonsense verdict to consider."  Mot. for Leave at 10.  The Court disagrees with petitioner's characterization of the trial court's instruction and rejects this argument.

shot posted in the Norristown police station on the day after the incident.  This statement was given on February 18, 1998, months after Jones's initial statement to police on the night of the murder.  Specifically, the Montgomery County Detectives Supplemental Report states: "Jones told me that the following day, after the murder, he was in the police station and he saw a mug shot of the actor Jorge Munoz.  Jones told me that he was sure that he knew Munoz from seeing him hanging out on the streets in the west end of town."  Pet. Suppl. Obj., Ex. B.  Petitioner alleges that the mug shot was not, in fact, posted, and which is "significant because Jones stated to the police on the date of the incident that he could not identify the shooter or a photograph of the shooter."  Pet. Obj. at 3.

This argument is repeated in petitioner's *pro se* submissions and is related to the claim presented in the § 2254 Petition that trial counsel was ineffective for failing to impeach Jones.  The Court disagrees.  Petitioner's claim on this issue is that trial counsel was ineffective for failing to investigate whether or not Jones actually saw the photograph.  Petitioner's allegations that Jones did not see the photograph as claimed are mere speculation.  See, e.g., Pet. Suppl. Obj. at 10-11.  Specifically, petitioner speculates that further investigation would have produced evidence to impeach Jones's statement that he viewed the photograph the morning after the shooting.  That is insufficient to overcome the presumption of competent assistance of counsel.  Cf. United States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989) (noting that in failure to investigate claim, petitioner must satisfy prejudice analysis under Stickland not by mere speculation, but by demonstrating what evidence would result).

Based on this initial showing, the Court concludes that the interest of justice does not require further consideration of this claim.

G.      **Admission of Evidence Relating to the Latin Kings Gang**

Finally, petitioner claims that the trial court improperly allowed evidence to be admitted that related to the Latin Kings gang and petitioner's association with the gang.  Petitioner argues that the prejudicial effect of that evidence outweighed its probative value, and that the failure of trial and appellate counsel to raise this issue constituted ineffective assistance.  Respondents take the position that the testimony relating to the Latin Kings gang was relevant and therefore that the lower court did not err in determining that such evidence had been properly admitted by the trial court.

A variation of this claim was presented in petitioner's  1925(b) Concise Statement.  There petitioner argued that the trial court erred in allowing the testimony about the Latin Kings gang because that testimony was not relevant.  That claim was rejected by the trial court because such testimony was admitted for the purpose of explaining petitioner's motive in committing the crime.  Specifically, the court concluded that the testimony about the Latin Kings gang and petitioner's association with the gang was relevant "because it bolsters the testimony of witnesses that stated that they heard Mr. Rodriguez order his co-defendant, the appellant [petitioner], to shoot the victim."  Resp. Ans., Ex. C, at 9.

Evidence of gang affiliation, like all other evidence, is admissible if relevant to a disputed issue, but if such evidence is more prejudicial than probative, it should be excluded.  See, e.g., United States v. McKay, 431 F.3d 1085, 1093 (8th Cir. ) ("While evidence of gang membership is admissible if relevant to a disputed issue, gang affiliation evidence is not admissible where it is meant merely to prejudice the defendant or prove his guilt by association with unsavory characters.") (citations omitted).  Federal courts have specifically held that gang membership is

24

admissible to show motive for criminal activity.  See, e.g., United States v. Hartsfield, 976 F.2d 1349, 1352-53 (10th Cir. 1992); United States v. Rodriguez, 925 F.2d 1049, 1053-54 (7th Cir. 1991); cf. Commonwealth v. Brewington, 740 A.2d 247, 251-52 (Pa. Super Ct. 1999), petition for allowance of appeal denied, 758 A.2d 660 (Pa. 2000) (holding that evidence of gang membership is admissible to prove conspiracy).  In this case evidence of petitioner's gang membership was highly probative on the issue of motive to commit murder.  What made it probative was the evidence that petitioner, a Latin Kings gang member, was ordered by his gang superior to shoot a member of a rival gang in retaliation for previous gang-related violence.

The Court concludes that the evidence relating to the Latin Kings gang was highly probative; the interest of justice does not require consideration of this claim.

## VII.   CERTIFICATE OF APPEALABILITY

In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition alleges a deprivation of constitutional rights." Morris v. Horn, 187 F.3d 333, 340 (3d Cir. 1999); see also 28 U.S.C. § 2253(c).  The Court concludes that petitioner has not made such a showing with respect to the claim raised in the § 2254 Petition and therefore a certificate of appealability will not be issued.

## VIII.  CONCLUSION

For the foregoing reasons, the Court approves and adopts Magistrate Judge Strawbridge's Report and Recommendation dated November 20, 2006, overrules petitioner's Objections to the Report and Recommendation, denies petitioner's request to present additional claims, and denies the Habeas Petition.  A certificate of appealability will not issue on the ground that petitioner has

not made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2).

An appropriate Order follows

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JORGE L.  MUNOZ** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **SUPERINTENDENT JAMES L. GRACE,** | : | **NO.  05-4199** |
| **THE ATTORNEY GENERAL OF** | : | |
| **PENNSYLVANIA, and THE DISTRICT** | : | |
| **ATTORNEY'S OFFICE OF** | : | |
| **MONTGOMERY COUNTY** | : | |
| **Respondents.** | : | |

## O R D E R

**AND NOW**, this 9th day of August, 2007, upon consideration of the Report and

Recommendation of United States Magistrate Judge David R. Strawbridge dated November

20, 2006 (Document No. 23), Petitioner's Objections to Report and Recommendation of the

Honorable David R. Strawbridge, U.S.M.J. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

Rule 72.1 (Document No. 26, filed December 15, 2006); Respondent/Commonwealth's

Answer to Petitioner's Objections to Report and Recommendation of The Honorable David R.

Strawbridge, United States Magistrate Judge (Document No. 29, filed January 22, 2007);

Petitioner's *pro se* Supplement Objection to the Magistrate's Report and Recommendation

(Document No. 31, filed February 22, 2007); Petitioner's *pro se* Reply to Respondents

Objections to Report/Recommendation (Document No. 32, filed February 23, 2007);

Petitioner's *pro se* Supplement Objection to the Magistrate's Report and Recommendation

(Document No. 33, filed February 26, 2007); Respondent/Commonwealth's Answer to

Petitioner's Supplemental Objections to Report and Recommendation of Magistrate Judge

David R. Strawbridge (Document No. 35, filed April 23, 2007); and Petitioner's *pro se*

Motion for Leave to File Objections to Respondents Supplemental Objections to Petitioner's

Objections to the Magistrate Judge David R. Strawbridge Report and Recommendation

(Document No. 37, filed May 16, 2007); **IT IS ORDERED** as follows:

1.    The Report and Recommendation of United States Magistrate Judge David R.

Strawbridge dated November 20, 2006, as modified by the attached Memorandum, is

**APPROVED** and **ADOPTED**;

2.    Petitioner's Objections to Report and Recommendation of the Honorable

David R. Strawbridge, U.S.M.J. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1

(Document No. 26), are **OVERRULED**.  Petitioner's request for leave to raise and introduce

evidence on additional claims included in these Objections is **DENIED**;

3.    Petitioner's *pro se* Supplement Objection to the Magistrate's Report and

Recommendation (Document No. 31) is **OVERRULED**;

4.    Petitioner's *pro se* Supplement Objection to the Magistrate's Report and

Recommendation (Document No. 33) is **OVERRULED**;

5.    Petitioner's *pro se* Motion for Leave to File Objections to Respondents

Supplemental Objections to Petitioner's Objections to the Magistrate Judge David R.

Strawbridge Report and Recommendation (Document No. 37) is **DENIED**;

7.    The Petition for Writ of Habeas Corpus filed by petitioner, Gary Munoz,

pursuant to 28 U.S.C. § 2254 and Supporting Memorandum of Law is **DENIED;** and

8.    A certificate of appealability will not issue on the ground that petitioner has not

made a substantial showing of a denial of a constitutional right as required under 28 U.S.C.

§ 2253(c)(2).

BY THE COURT:


<u>            /s/ Honorable Jan E. DuBois  </u>
JAN E. DUBOIS, J.